# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| FREEDOM MORTGAGE CORPORATION, | Case No.: 2:19-cv-01411-APG-DJA |
| Plaintiff | **Order (1) Granting in Part Trust's First Motion to Dismiss (2) Denying Nelson's Motion to Dismiss, and (3) Denying as Moot Trust's Second Motion to Dismiss** |
| v. | |
| JAMES S. KENT, et al., | |
| Defendants | [ECF Nos. 10, 11, 24] |

Plaintiff Freedom Mortgage Corporation (Freedom) sues to determine whether a deed of trust still encumbers property located at 6221 Red Pine Court in Las Vegas following a non-judicial foreclosure sale conducted by a homeowners association (HOA) and a state court declaratory relief action to which Freedom was not a party.  Freedom sues (1) James Kent as trustee for the 6221 Red Pine Trust (Trust), which claims to own the property through the chain of title flowing from the HOA's foreclosure; and (2) James B.C. Nelson, who claims to own the property through the chain of title flowing from a different foreclosure on the original deed of trust.[1]  In addition to seeking declaratory relief under Nevada Revised Statutes § 40.010,[2] Freedom asserts claims against Trust for slander of title and interference with contractual relations.

Trust moves to dismiss, raising a variety of arguments.  Nelson joins that motion and separately moves to dismiss, contending he is not a proper party to the declaratory relief claims because he does not claim an interest in the property that is adverse to Freedom's interest.  Trust

---

[1] Freedom also sued the HOA, defendant Torrey Pines Estates Homeowners Association, but that claim has been dismissed. ECF No. 20.

[2] Section 40.010 provides: "An action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action, for the purpose of determining such adverse claim."

filed a second motion to dismiss under Nevada's anti-SLAPP statute.  Freedom opposes these motions.  For the reasons set forth below, I grant in part Trust's first motion, deny Nelson's motion, and deny as moot Trust's second motion.

## I. BACKGROUND

In October 2004, Patrick McKnight took title to the property through a Grant Bargain and Sale Deed. ECF No. 1 at 2-3.  McKnight financed the purchase of the property through a loan from Chase Manhattan Mortgage Corporation (Chase). *Id.* at 3.  Chase secured the loan through a deed of trust on the property (the Chase deed of trust). *Id.* at 3.  Freedom alleges that after Chase funded the loan, the loan was sold to Federal National Mortgage Association (Fannie Mae). *Id.*

In March 2008, the HOA at issue, Torrey Pines Estates Homeowners Association (Torrey Pines), recorded a notice of delinquent assessment lien against the property. ECF No. 1 at 3.  Torrey Pines' lien included a superpriority portion consisting of five months of unpaid assessments. *Id.* at 4.  In September 2008, Torrey Pines recorded a notice of default related to the HOA lien. *Id.*  In June 2009,[3] Torrey Pines recorded a notice of sale. *Id.*  The HOA foreclosure sale took place on October 23, 2009, at which the HOA credit bid and purchased the property for approximately $4,000. *Id.*  In November 2009, McKnight[4] recorded a notice of lis pendens in relation to a lawsuit filed in Nevada state court against Torrey Pines challenging the HOA foreclosure (the 2009 litigation). ECF No. 10-1.  Despite the HOA sale occurring in 2009, Torrey

---

[3] The complaint states the notice of sale was recorded in June 2008, but it must have been in June 2009, after the September 2008 notice of default.  That is consistent with the instrument number the complaint identifies for this event, which is 20090618-0003930. ECF No. 1 at 4.

[4] The lawsuit was filed by McKnight Family LLP. ECF No. 10-1.  The parties do not differentiate between McKnight and various McKnight entities amongst whom ownership was transferred.  For ease of reference, I refer to McKnight and the McKnight entities as McKnight.

Pines did not record a foreclosure deed until May 2011. ECF No. 1 at 4.  And although Trust

claims an interest in the property through Torrey Pines' chain of title, there is no recorded

transfer of title from Torrey Pines to Trust or anyone else. *Id.* at 5.

An assignment of the Chase deed of trust to Fannie Mae was recorded in September

2010. *Id.* at 5.  Fannie Mae foreclosed on the Chase deed of trust in December 2011, Fannie Mae

credit bid on the property, and Fannie Mae thereafter recorded a trustee's deed upon sale

identifying itself as the property owner. *Id.* at 5.  In April 2012, Fannie Mae conveyed the

property to Appleton Properties, LLC. *Id.*  Appleton sold it to Nelson a few months later. *Id.*

Before the sale to Nelson closed, Nelson's escrow company sent requests to Torrey Pines

for the amount of any outstanding HOA assessments and notified Torrey Pines that Nelson

would be the new property owner. *Id.*  Torrey Pines responded with a new owner packet and,

after escrow closed, it set Nelson up as the property's owner in its own records. *Id.*  According to

the complaint, Torrey Pines did not notify Nelson or the escrow company that Torrey Pines

owned the property through its foreclosure, and instead treated Nelson as the rightful owner. *Id.*

In 2015, Nelson obtained a loan from North American Financial Corp. (NAFC), which

was secured by a deed of trust on the property (the NAFC deed of trust). *Id.* at 6.  The NAFC

deed of trust identifies Mortgage Electronic Registration Systems, Inc. (MERS) as the

beneficiary under the deed of trust. ECF No. 21-4 at 3.  NAFC immediately transferred the loan

and deed of trust to Paramount Residential Mortgage Group, Inc. (PRMG), which in turn

immediately transferred it to Freedom. ECF No. 1 at 5.  These transfers were not recorded in

2015.

In April 2016, Trust sued Nelson and NAFC in Nevada state court (the 2016 lawsuit).

ECF No. 1 at 6.  In that suit, Trust alleged that it obtained title to the property from Torrey Pines,

that the 2009 HOA foreclosure sale extinguished the Chase deed of trust, and that Nelson's title and the NAFC deed of trust thus were eliminated because they derived from the chain of title flowing from the Chase deed of trust. *Id.* NAFC advised Trust's counsel that it had transferred the deed of trust to PRMG, that NAFC no longer had an interest in the property, and that it should be dismissed from the lawsuit. *Id.* Despite receiving this information, Trust did not add MERS, PRMG, or Freedom to the 2016 lawsuit. *Id.* at 7; *see also* ECF No. 21-1 (default judgment in the state court action listing the defendants as Nelson and NAFC).

In May 2016, the 2009 litigation concluded with a stipulated dismissal that stated there was "insufficient evidence that the HOA foreclosure was improper or without authority and there [was] insufficient evidence to justify setting aside the foreclosure sale." ECF No. 10-2. In June 2016, Trust recorded a notice of lis pendens related to the 2016 litigation. ECF No. 10-3. That case ended in May 2017 with a default judgment being entered against Nelson and NAFC.[5] ECF No. 10-4. The default judgment stated that Trust obtained the property through the HOA foreclosure sale and that sale "eliminated all encumbrances, liens and mortgages, and as such, the attempted foreclosure by the mortgage Lender on or around Dec. 19, 2011 and subsequent deed recorded Dec. 23, 2011 were null and void, and the deed to Appleton Properties LLC recorded on or around April 27, 2012 was null and void, as the Lender's lien had been eliminated by the Oct. 23, 2009 foreclosure." *Id.* at 2-3. The default judgment also declared that Trust had superior title over Nelson and NAFC and all of their assignees and transferees, "including MERS." *Id.* at 3.

---

[5] After Trust obtained the default judgment against Nelson, Nelson assigned his rights under a title insurance policy to Trust. ECF Nos. 10-5 at 3; 34-10. Trust and Nelson have sued the title insurer, First American Title Insurance, in Nevada state court for breach of contract and bad faith based on First American's failure to defend Nelson in the 2016 litigation. *Id.*

1    According to the complaint, PRMG did not learn of the 2016 lawsuit until 2018 and

2  Freedom did not learn of it until March 2019.[6] *Id.*  In June 2019, an assignment of the NAFC

3  deed of trust was recorded documenting the transfer to Freedom. *Id.*; ECF No. 10-6.

4  **II.  LEGAL STANDARD**

5    In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken

6  as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v.*

7  *Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  However, I do not assume the truth

8  of legal conclusions merely because they are cast in the form of factual allegations. *See Clegg v.*

9  *Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  A plaintiff must make sufficient

10 factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550

11 U.S. 544, 556 (2007).  Such allegations must amount to "more than labels and conclusions, [or] a

12 formulaic recitation of the elements of a cause of action." *Id.* at 555.

13 **III.  TRUST'S MOTION TO DISMISS (ECF No. 10)**

14    Trust raises a variety of arguments as to why Freedom's claims should be dismissed,

15 including that Freedom is bound by the outcome of the 2009 and 2016 state court cases due to

16 the recorded lis pendens for each action, that its declaratory relief and slander of title claims are

17 untimely, and that Freedom otherwise fails to state a claim.  Nelson joins Trust's motion.

18 ////

19 ////

20

---

21 [6] The complaint states Freedom first learned of the 2016 litigation in March 2019, but I assume
   this is a typographical error and Freedom meant 2018 because Freedom filed a motion to
22 intervene in the 2016 litigation in December 2018. ECF No. 10-8.  The state court denied
   Freedom's motion in February 2019 because the state court action was closed and under state
23 law a party cannot intervene in a closed case. ECF Nos. 10-9; 24-10.  Whether Freedom learned
   about the 2016 litigation in 2018 or 2019 has no bearing on the outcome of my ruling on the
   current motions to dismiss.

### A.  Lis Pendens

Two lis pendens were recorded regarding two separate state court lawsuits over the validity of the HOA sale and Nelson's title.  The defendants argue that because those were recorded before Freedom obtained the deed of trust, Freedom took the deed of trust subject to the outcome of the state court cases.  The defendants contend that both lawsuits resulted in rulings that the HOA foreclosure sale extinguished the Chase deed of trust and consequently also eliminated Nelson's title and the NAFC deed of trust.  They thus argue all of Freedom's claims fail.

Freedom responds that it obtained its interest in the property before the 2016 lis pendens was recorded, so it did not take subject to the outcome of the 2016 litigation.  Freedom also argues it cannot be bound by the 2016 litigation's default judgment because it was not a party to, or in privity with a party to, that case.  Freedom also argues Trust obtained the default judgment through fraudulent means because it did not name the beneficiary of record for the deed of trust and did not name the then-owner of the note and deed of trust even after being told who that was.  As for the 2009 lis pendens, Freedom argues that action did not jeopardize the deed of trust's validity, so neither Freedom nor its predecessors had a reason to participate in that litigation or to seek a declaration earlier.

"The doctrine of lis pendens provides constructive notice to the world that a dispute involving real property is ongoing." *Weddell v. H2O, Inc.*, 271 P.3d 743, 751 (Nev. 2012); Nev. Rev. Stat. § 14.010(3) (providing that recording a lis pendens provides "constructive notice to a purchaser or encumbrancer of the property affected thereby").  Freedom does not dispute that if it took subject to either or both of the lis pendens, then it is bound by the outcome of the related litigation. *See Taddeo v. Am. Invsco Realty*, No. 2:08-CV-01463-KJD, 2011 WL 4007402, at *1

1   (D. Nev. Sept. 8, 2011) ("A lis pendens is a 'notice recorded in the chain of title to real property,

2   . . . to warn all persons that certain property is the subject matter of litigation, and that any

3   interests acquired during the pendency of the suit are subject to its outcome.'" (quoting Black's

4   Law Dictionary 942-43 (7th ed. 1999)).

5           1.  2009 Lis Pendens

6           Freedom does not dispute that it took with record notice of the 2009 lis pendens and its

7   own allegations state that it did.  Freedom also does not dispute that it is bound by the outcome

8   of the 2009 litigation.  The 2009 litigation resulted in a stipulated judgment that there was

9   "insufficient evidence that the HOA foreclosure was improper or without authority and there is

10  insufficient evidence to justify setting aside the foreclosure sale." ECF No. 10-2.

11          Freedom contends this judgment means nothing with respect to the Chase deed of trust

12  while the defendants characterize it as a ruling that the HOA sale extinguished it.  The judgment

13  does not expressly state that it means the Chase deed of trust is extinguished.  It is possible that a

14  deed of trust could survive a properly conducted HOA superpriority foreclosure without the sale

15  being entirely set aside. *See, e.g.*, *Berezovsky v. Moniz*, 869 F.3d 923, 933 (9th Cir. 2017)

16  (holding that a purchaser at an HOA foreclosure sale took title to the property subject to the deed

17  of trust because the federal foreclosure bar preserved the deed of trust); *Bank of Am., N.A. v. SFR*

18  *Invs. Pool 1, LLC*, 427 P.3d 113, 116 (Nev. 2018) (en banc), *as amended on denial of reh'g*

19  (Nov. 13, 2018) (holding that "a first deed of trust holder's unconditional tender of the

20  superpriority amount due results in the buyer at foreclosure taking the property subject to the

21  deed of trust").

22          On the other hand, the judgment does not expressly state that the deed of trust survived

23  the sale.  A properly conducted HOA superpriority foreclosure can extinguish all junior liens,

7

including a deed of trust. *SFR Invs. Pool 1, LLC v. U.S. Bank*, 334 P.3d 408, 419 (Nev. 2014) (en banc).  By Freedom's own allegations, the HOA lien included superpriority amounts.  Consequently, a judgment that states the sale was properly conducted and that there is no basis to set it aside could mean that the sale extinguished the Chase deed of trust.

I do not have sufficient information at this stage to decide what this judgment means, and the parties do not address how am I to make that determination.  I therefore deny this portion of the motion to dismiss, without prejudice to later motion practice addressing these issues.

### 2.  2016 Lis Pendens

The complaint alleges that PRMG transferred the loan and deed of trust to Freedom in February 2015. ECF No. 1 at 6.  At this stage I must accept this allegation as true.  Because the 2016 litigation and related lis pendens post-date that transfer, Freedom has plausibly alleged that it did not take with notice of or subject to the 2016 lis pendens.  I therefore deny this portion of the defendants' motion.

### B.  Slander of Title

Count four of the complaint alleges that Trust "made a false and malicious communication through the 2016 Case and recorded Default Judgment disparaging Freedom's interest in the Property." ECF No. 1 at 12.  Freedom alleges it "has been damaged by this communication as it has put at risk its contractual relationship with Nelson and purports to eliminate Freedom's valuable interest in the Property entirely." *Id.*

Trust argues that its state court filings and the default judgment were not false or malicious and the litigation privilege protects communications in the course of judicial proceedings.  In response to Trust's first motion to dismiss, Freedom does not respond to the defendants' argument that their communications in the 2016 litigation are protected by the

1   litigation privilege.  I therefore could grant the defendants' motion as unopposed and dismiss

2   count four. *See* LR 7-2(d).

3          But Freedom responds to the litigation privilege argument in response to Trust's second

4   motion to dismiss.  Freedom argues that the litigation privilege does not apply to attorney

5   malfeasance or to a non-communicative course of conduct.  Freedom contends that Trust's

6   pursuit of a default judgment against a party it knew no longer had an interest in the property

7   while not naming parties it knew had an interest, not advising the state court of this information,

8   and then structuring the proposed default judgment to bind MERS even though MERS was not a

9   party is conduct that is false and malicious and not subject to the litigation privilege.

10         To state a claim for slander of title, Freedom must plausibly allege a false and malicious

11  communication disparaging to title in land that causes special damage. *Higgins v. Higgens*, 744

12  P.2d 530, 531 (Nev. 1987).  The complaint does not clearly identify the false and malicious

13  communication.  It states only that Trust made a false and malicious communication "through

14  the 2016 Case and recorded Default Judgment." ECF No. 1 at 12.  Freedom does not identify

15  what is stated in the 2016 case and the default judgment that is false.  Presumably, Freedom is

16  arguing that by intentionally concealing material information from the state court, Trust's

17  communications to the court were false and malicious.  Yet at the same time, Freedom denies

18  that Trust's communications to the court form the basis of its claims. *See* ECF No. 32 at 16

19  ("The Trust's procedural action of seeking default against NAFC once it knew that NAFC had

20  no claim to the Property and structuring the Default Judgment to be applied to MERS and all

21  other unnamed third-parties that the Trust knew held an interest in the Property is the basis for

22  the Complaint in this Case, not any communication made by the Trust.").

23

Regardless of whether this claim is based on Trust's communications to the state court or its course of conduct before that court, the litigation privilege applies to bar civil liability. The Supreme Court of Nevada has adopted "the long-standing common law rule that communications uttered or published in the course of judicial proceedings are absolutely privileged, rendering those who made the communications immune from civil liability." *Greenberg Traurig v. Frias Holding Co.*, 331 P.3d 901, 903 (Nev. 2014) (en banc) (quotation omitted). The privilege applies even to knowingly false and malicious communications. *Id.* It also applies to "conduct occurring during the litigation process." *Bullivant Houser Bailey PC v. Eighth Jud. Dist. Ct. of State ex rel. Cnty. of Clark*, No. 57991, 381 P.3d 597, 2012 WL 1117467, at \*3 (2012) (emphasis and quotation omitted).

The privilege's scope is "quite broad," and I should apply it "liberally." *Fink v. Oshins*, 49 P.3d 640, 644 (Nev. 2002). Consequently, when determining whether the privilege applies, I resolve any doubt in favor of the privilege's application. *Id.*

The privilege is not without limits, however. *Greenberg Traurig*, 331 P.3d at 903. The Supreme Court of Nevada has declined to apply it under circumstances that are "inconsistent with the public policy behind the privilege." *Dickerson v. Downey Brand LLP*, No. 67768, 408 P.3d 543, 2017 WL 6316552, at \*3 (Nev. 2017). "The litigation privilege is designed to ensure that attorneys have the utmost freedom to engage in zealous advocacy and are not constrained in their quest to fully pursue the interests of, and obtain justice for, their clients." *Id.* (quotation omitted). But it "is not designed to provide attorneys with the ability to act malfeasant and then hide behind the privilege with impunity." *Id.* The Supreme Court of Nevada thus declined to apply the privilege where an attorney "manipulated his position of influence with [an expert] and

1 [the attorney's clients] in order to lower [the expert's] fees, raise his own fees, and, presumably,

2 allow his clients funds they otherwise were not entitled to keep." *Id.*

3       I also should examine whether the "gravamen" of the complaint is based on non-

4 privileged actions rather than potentially privileged communications. *Id.* at *4.  For example, in

5 *Dickerson*, the claims against the attorney were "not based on attorney-client communications or

6 any communications between [the attorney] and [his clients] in which he provided legal advice."

7 *Id.*  Rather, the claims were "based on [the attorney] and [his clients'] failures to uphold the

8 settlement agreement" through which the expert was to be paid. *Id.*  The attorney thus "did more

9 than just advise his clients that they had the option of not paying [the expert]; instead, he caused

10 them to breach the contract by mendacious behavior." *Id.*  Under those circumstances, the

11 Supreme Court of Nevada concluded the district court did not err by refusing to apply the

12 privilege. *Id.*

13       Freedom's allegations share some surface similarities to *Dickerson* in that Freedom

14 alleges attorney malfeasance through a course of conduct.  But that is where the similarity ends.

15 The gravamen of Freedom's slander of title claim (to the extent it can be discerned from the

16 vague allegation described above) is Trust's communications to the state court and its course of

17 conduct in litigating that action to a default judgment.  Statements in court papers or made to a

18 court during a judicial proceeding fall within the heart of the privilege.  Additionally, applying

19 the privilege to this claim is consistent with the policy behind the privilege because Freedom's

20 slander of title claim rests on Trust's attorneys' litigation choices and their presentation of the

21 case to the state court on behalf of their client's interests.  Finally, I should resolve doubts in

22 favor of applying the privilege.  I therefore conclude that the privilege applies, so I dismiss

23 Freedom's slander of title claim in count four.

### C.  Intentional Interference with Contractual Relations

Count five of the complaint alleges that the NAFC deed of trust constitutes a valid contract between Freedom and Nelson and that Trust was aware of it.  According to the complaint, Trust intentionally acted to disrupt that contractual relationship and intended to cause Nelson to breach the NAFC deed of trust "by causing Nelson to relinquish title to the Property in violation of his loan covenants under the NAFC Loan and NAFC Deed of Trust." ECF No. 1 at 13.

Trust argues that by the complaint's own allegations it did not cause Nelson to relinquish title.  Rather, Nelson's title was eliminated by the default judgment.  Trust also argues there is no allegation that it intended or caused Nelson to stop paying on the note and there is no allegation that Nelson in fact has stopped paying on the note.  Finally, Trust argues that to the extent it somehow interfered with Freedom's relationship with Nelson, there is no allegation as to how Freedom was injured because the NAFC deed of trust was extinguished through either the 2009 foreclosure and litigation or the 2016 litigation, and not through any acts Trust took to interfere with Nelson.

Freedom responds that the deed of trust requires Nelson to defend his title to the property and that he complied with that contractual provision when he filed a motion to set aside the default judgment in the 2016 litigation.  Freedom contends that Trust then induced Nelson to withdraw his motion and to stipulate to a judgment that would extinguish his title.

I grant the defendants' motion because Freedom relies on facts not alleged in the complaint.  The complaint does not state that Nelson filed a motion to set aside the default judgment or that Trust induced Nelson to withdraw his motion.  Freedom does not attempt to

1  defend the claim as pleaded and therefore consents to its dismissal. *See* LR 7-2(d).  I therefore

2  dismiss the intentional interference claim in count five.

3  **D.  Declaratory Relief**

4        The complaint sets forth three counts for declaratory relief.  In count one, Freedom seeks

5  a declaration that the 2009 HOA foreclosure did not extinguish the deed of trust because of the

6  federal foreclosure bar. ECF No. 1 at 7-8.  It also seeks a declaration that the default judgment

7  from the 2016 litigation does not bind Freedom because Freedom was not a party to that case and

8  the default judgment was procured through fraud on the court. *Id.* at 9-10.  In count two,

9  Freedom seeks a declaration that the 2009 HOA foreclosure did not extinguish the deed of trust

10  because prior to the sale, McKnight made payments sufficient to satisfy the superpriority

11  amount. *Id.* at 10.  In count three, Freedom alleges that before Nelson purchased the property,

12  Torrey Pines represented to Nelson (through his escrow company) that Torrey Pines would

13  recognize him as the new owner of the property. *Id.* at 11.  Freedom alleges that because Trust

14  claims to derive its title from Torrey Pines, it is bound by Torrey Pines' representations. *Id.*

15  Additionally, Freedom alleges that because Trust never recorded the transfer of title from Torrey

16  Pines, Freedom is entitled to bona fide purchaser status such that Trust's interest in the property

17  is subject to the NAFC deed of trust. *Id.* at 12.

18        1.  Statute of Limitations

19        The defendants argue that Freedom's declaratory relief claims are untimely because the

20  HOA foreclosure took place in 2009 and Freedom did not file suit until 2019.  Freedom contends

21  its claims are timely because it had no basis to bring suit until it discovered the default judgment

22  in 2019.

23

1    "A claim may be dismissed as untimely pursuant to a 12(b)(6) motion only when the

2    running of the statute of limitations is apparent on the face of the complaint." *United States ex*

3    *rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013)

4    (alteration and quotation omitted).  A limitations period begins to run "from the day the cause of

5    action accrued." *Clark v. Robison*, 944 P.2d 788, 789 (Nev. 1997).  A cause of action generally

6    accrues "when the wrong occurs and a party sustains injuries for which relief could be sought."

7    *Petersen v. Bruen*, 792 P.2d 18, 20 (Nev. 1990); *see also State ex rel. Dep't of Transp. v. Pub.*

8    *Emps.' Ret. Sys. of Nev.*, 83 P.3d 815, 817 (Nev. 2004) (en banc) ("A cause of action 'accrues'

9    when a suit may be maintained thereon." (quotation omitted)).  Nevada has adopted the

10   discovery rule, and thus time limits generally "do not commence and the cause of action does not

11   'accrue' until the aggrieved party knew, or reasonably should have known, of the facts giving

12   rise to the damage or injury." *G & H Assocs. v. Ernest W. Hahn, Inc.*, 934 P.2d 229, 233 (Nev.

13   1997).

14        I have previously ruled that the four-year catchall limitation period in Nevada Revised

15   Statutes § 11.220 applies to claims under Nevada Revised Statutes § 40.010 brought by a

16   lienholder seeking to determine whether an HOA sale extinguished its deed of trust. *Bank of Am.,*

17   *N.A. v. Country Garden Owners Ass'n*, No. 2:17-cv-01850-APG-CWH, 2018 WL 1336721, at

18   *2 (D. Nev. Mar. 14, 2018).  When Freedom obtained the deed of trust in February 2015, it took

19   with notice that (1) the HOA had recorded a notice of delinquent assessment lien, notice of

20   default, and notice of sale; (2) that Nevada law granted HOAs superpriority liens that are capable

21   of extinguishing deeds of trust; (3) that the HOA subsequently recorded a deed upon sale

22   claiming it owned the property; and (4) that a notice of lis pendens had been filed related to the

23   2009 litigation that challenged the HOA sale.  Freedom thus took with record notice of a claim to

the property's title that was adverse to Nelson's, facts that gave notice that the 2009 HOA

foreclosure sale may have extinguished the Chase deed of trust from which Nelson's title

derived, and a lis pendens that gave notice that an action regarding the effect of the HOA sale

was pending in which Freedom could have intervened.  Freedom filed suit more than four years

later in August 2019, so it is apparent from the face of the complaint that Freedom's declaratory

relief claims are untimely to the extent they seek a judicial declaration that the 2009 HOA sale

did not extinguish the deed of trust.

Freedom contends the limitation period should run from the default judgment, not the

2009 HOA sale because Freedom was "not harmed by the HOA sale." ECF No. 21 at 5.  That

position is belied by the fact that Freedom seeks declarations in this case that the 2009 HOA sale

did not extinguish the deed of trust, either because of the federal foreclosure bar or because

McKnight tendered the superpriority amount prior to the sale.

Freedom contends that it is entitled to invoke the federal foreclosure bar because it is

Fannie Mae's "successor" or "transferee." ECF No. 21 at 21.  To the extent Freedom means by

this that it should get the benefit of the six-year statute of limitations extender provision in the

Housing and Economic Recovery Act of 2008 (HERA) because Fannie Mae is in the chain of

title through which Freedom claims its interest in the property, I reject that argument.  HERA

provides that the statute of limitations for contract claims[7] "brought by the [Federal Housing

Finance Agency (FHFA)] as conservator" is the longer of either "the 6-year period beginning on

the date on which the claim accrues" or "the period applicable under State law." 12 U.S.C.

§ 4617(b)(12)(A).  Although the statute refers to an action brought by FHFA as conservator,

---

[7] If HERA applies to Freedom, its declaratory relief claims are considered contract claims under HERA's extender statute. *M&T Bank v. SFR Invs. Pool 1, LLC*, 963 F.3d 854, 858 (9th Cir. 2020).

1  courts have held it applies when the plaintiff is Fannie Mae or its loan servicer. *See, e.g.*, *M&T*

2  *Bank v. SFR Invs. Pool 1, LLC*, 963 F.3d 854, 857-58 (9th Cir. 2020).  The extender statute

3  applies to these entities because they are acting as FHFA's assignee or agent and thus Fannie

4  Mae and the servicer stand in FHFA's shoes when seeking to obtain declaratory relief to

5  preserve the deed of trust, "which is property of the conservatorship." *Id.*

6      Freedom is not FHFA's successor, transferee, assignee, or agent.  The Chase deed of

7  trust, which Fannie Mae allegedly owned, was extinguished by either the HOA's 2009

8  foreclosure sale or Fannie Mae's 2011 foreclosure.  Consequently, Freedom is not an assignee or

9  agent under the Chase deed of trust.  To the extent Fannie Mae obtained title to the property

10  through the 2011 foreclosure, it passed title to Appleton, who then transferred title to Nelson.

11  Title has never passed to Freedom.  Freedom thus is not an assignee or transferee of Fannie

12  Mae's title either.  Rather, it holds a deed of trust executed by Nelson.  Although the validity of

13  Freedom's deed of trust as an encumbrance on the property depends on the chain of title running

14  through Fannie Mae, Freedom does not stand in Fannie Mae's or FHFA's shoes as an assignee or

15  agent.  It therefore does not get the benefit of the six-year limitation period.

16      Even if Freedom was entitled to invoke HERA's extender statute, then Freedom also

17  would be charged with any defense that would be available against its predecessors in that line of

18  transfers.  Because Appleton and Nelson both took with knowledge of the 2009 HOA foreclosure

19  notices and the 2011 HOA deed purporting to grant title to the HOA, they were on record notice

20  of a contrary claim to title and the clock started ticking no later than August 2012.  Even with a

21  six-year limitation period, Freedom's 2019 lawsuit is untimely to the extent it seeks a judicial

22  declaration that the 2009 foreclosure did not extinguish the deed of trust.  As a result, I grant the

23

16

1  defendants' motion to dismiss count two and the allegations regarding the federal foreclosure bar
2  in count one.

3          Although Freedom is time-barred from pursuing a judicial declaration that the 2009
4  foreclosure did not extinguish the Chase deed of trust, that does not, in and of itself, result in
5  either cancellation of the Chase deed of trust or preclude the possibility of Freedom pursuing a
6  nonjudicial foreclosure to which no statute of limitations applies. *See Facklam v. HSBC Bank*
7  *USA for Deutsche ALT-A Sec. Mortg. Loan Tr.*, 401 P.3d 1068, 1070-71 (Nev. 2017) (en banc).
8  And, as discussed above, it is not clear (at least on the record currently before me) that the 2009
9  litigation resulted in a judgment that extinguished the Chase deed of trust.  Consequently, it is
10 not clear that Freedom's other requested declaratory relief is futile.  I therefore address whether
11 the remainder of Freedom's declaratory relief claims are timely.

12         In count one, Freedom seeks a declaration that it is not bound by the default judgment
13 because (1) Nevada law requires all interested parties to be joined in a declaratory relief action
14 and Trust did not join MERS, PRMG, or Freedom; and (2) Trust obtained the default judgment
15 through fraud on the court by joining only uninterested parties and not joining those with a
16 known interest.  Freedom alleges that it did not learn of the 2016 litigation until 2019 (or 2018 if
17 that was a typographical error in the complaint).

18         Under Nevada Revised Statutes § 30.130, "[w]hen declaratory relief is sought, all persons
19 shall be made parties who have or claim any interest which would be affected by the declaration,
20 and no declaration shall prejudice the rights of persons not parties to the proceeding."  Based on
21 this section, Freedom seeks a declaration that the default judgment does not apply to it because
22 Trust failed to name all interested parties as required.  Freedom's claim is one to determine
23 adverse interests in property under § 40.010 based on Freedom's lien interest, and thus it is

1    subject to a four-year limitation period. *Country Garden Owners Ass'n*, 2018 WL 1336721, at

2    *2. This portion of Freedom's declaratory relief claim therefore is timely regardless of whether

3    it runs from the initiation of the 2016 litigation, the 2017 default judgment, or when Freedom

4    alleges it learned of the 2016 litigation.

5          As for Freedom's allegation that the default judgment was a fraud on the court, under

6    Nevada law, a final judgment may be attacked as a fraud on the court long after the judgment is

7    rendered. *See NC-DSH, Inc. v. Garner*, 218 P.3d 853, 862 (Nev. 2009) (en banc).  The Supreme

8    Court of Nevada has not set a definitive time limitation on either a motion or an independent

9    action to set aside a judgment on the basis of fraud on the court. *See id.* at 861-62.  However, it

10   did not find error where a district court granted relief even though 18 months had passed since

11   the challenged judgment was entered. *Id.*

12         Given that the default judgment was entered in 2017 and Freedom contends it did not

13   learn of it until 2018 or early 2019, I cannot say at the dismissal stage that it is apparent from the

14   face of the complaint that this claim is untimely under any applicable statute of limitations or

15   laches. *Nevada Indus. Dev., Inc. v. Benedetti*, 741 P.2d 802, 805 (Nev. 1987) ("The only time

16   limitations on independent actions under [Nevada Rule of Civil Procedure] 60(b) are laches or a

17   relevant statute of limitations.").  I therefore deny this portion of the defendants' motion.[8]

18         In count three, Freedom seeks a declaration that Nelson is the property owner because in

19   2012, Torrey Pines made representations to Nelson's escrow company that Nelson would be the

20

21   ───────────────────

     [8] Although I am not dismissing this claim on the grounds the defendants raise, I agree with the

22   Supreme Court of Nevada that "comity and efficiency make a motion in the court that rendered
     the judgment the preferred and normal procedure to attack a judgment for fraud on the court."

23   *NC-DSH, Inc.*, 218 P.3d at 857-58 (quotation omitted).  The parties have not addressed whether a
     federal court can, by declaration or otherwise, rule that a state court judgment is not binding
     because it was procured through fraud on the state court.  I therefore do not address that issue.

new owner and Torrey Pines treated Nelson as the new owner by listing him as such in its own records.  There is no allegation in the complaint as to when Freedom learned of these representations and actions, so it is not clear from the face of the complaint that this allegation is time-barred.  And to the extent Freedom is charged with NAFC's knowledge, there is no allegation about when NAFC learned of these actions and representations either.  Rather, the complaint alleges that the HOA made these representations to Nelson's escrow company and in its own records.  I therefore deny this portion of the defendants' motion.

### 2.  Failure to State a Claim

#### a.  Federal Foreclosure Bar and Tender

The defendants argue that Freedom fails to state a claim based on the federal foreclosure bar or tender of payments McKnight made prior to the HOA sale.  Freedom's request for a judicial declaration that the deed of trust was not extinguished by the HOA's foreclosure sale is time-barred.  I therefore do not address these arguments.

#### b.  Equitable Estoppel

The defendants argue that equitable estoppel is not a cause of action and may be asserted only as a defense.  They also contend that Freedom has not alleged facts to support all elements of the defense, including that it relied to its detriment on the HOA's representations where Torrey Pines allegedly made the representation to Nelson or his escrow company and there is no allegation Freedom even knew about the representations and so did not rely on them.  They also argue Freedom has not alleged that it was unaware of the true facts because it has alleged it took with record notice of the HOA foreclosure sale and deed showing title vesting in the HOA.

Freedom responds that it has asserted a claim for declaratory relief based on equitable estoppel and that is a valid way for Freedom to enforce estoppel against Torrey Pines and Trust.

1  Freedom does not respond to the defendants' arguments that it has not alleged all necessary

2  elements of equitable estoppel even if Freedom can seek declaratory relief on an equitable

3  estoppel defense.  I therefore grant the defendants' motion as unopposed and dismiss count three.

4  *See* LR 7-2(d).

5  **E.  Punitive Damages**

6  The defendants move to dismiss the complaint's request for punitive damages, arguing it

7  is not a separate cause of action.  They also argue punitive damages cannot be awarded unless

8  compensatory damages are also awarded, so if I dismiss the slander of title and intentional

9  interference claims, then I should also dismiss the request for punitive damages.  Finally, they

10  contend there are insufficient allegations of fraud, oppression, or malice to support a punitive

11  damages award.

12  Freedom responds that I should not dismiss its claims, and so I should not dismiss the

13  punitive damages request.  And it argues that Trust engaged in fraudulent behavior by hiding

14  information from the state court to obtain the default judgment in the 2016 litigation.

15  Freedom's only remaining claims are for declaratory relief.  Freedom has not presented

16  authority that it can obtain punitive damages for a declaratory relief claim.  I therefore dismiss

17  the request for punitive damages.

18  **F.  Amendment**

19  In its opposition, Freedom requests leave to amend without specifying how it would

20  amend.  If Freedom wants to amend its complaint, it must file a properly supported motion.

21  / / / /

22  / / / /

23  / / / /

**IV.  NELSON'S MOTION TO DISMISS (ECF No. 11)**

Nelson argues he does not claim an interest adverse to Freedom's, so he is not a proper party to this case.  Freedom responds that it must name Nelson because he may be affected by the declaratory relief Freedom seeks.

Under § 30.010, all parties that may be affected by the requested declaratory relief must be joined in the action.  Nelson therefore is a proper party to the case, so I deny his motion.

**V.  TRUST'S ANTI-SLAPP MOTION TO DISMISS (ECF No. 24)**

Trust moves to dismiss under Nevada's anti-SLAPP statute, contending that Freedom's claims for slander of title, interference with contract, and punitive damages should be dismissed because they are based on Trust's good faith activity in the course of the 2016 litigation. Because I have dismissed these claims and the request for punitive damages, I deny Trust's motion as moot.

**VI.  CONCLUSION**

I THEREFORE ORDER that defendant James S. Kent as Trustee of the 6221 Red Pine Trust's motion to dismiss **(ECF No. 10)** and defendant James Nelson's joinder **(ECF No. 14) are GRANTED in part and DENIED in part** as set forth in this order.

I FURTHER ORDER that defendant James Nelson's motion to dismiss **(ECF No. 11) is DENIED**.

I FURTHER ORDER that defendant James S. Kent as Trustee of the 6221 Red Pine Trust's motion to dismiss **(ECF No. 24) is DENIED as moot**.

DATED this 28th day of August, 2020.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE